**FILED**
**Aug 20, 2025**
**06:55 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Ronnie Slater | ) Docket No. 2020-01-0512 |
| | ) |
| v. | ) State File No. 49580-2020 |
| | ) |
| ADECCO USA, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Thomas L. Wyatt, Judge | ) |

---

### Affirmed and Remanded

---

In this interlocutory appeal, the employee alleges the trial court erred in declining to order the employer to authorize additional medical treatment, including left knee surgery. The employee initially injured his low back while working in the course and scope of his employment. After the employee underwent lumbar surgery, the employer offered him a transitional light duty position at a local nonprofit organization, which he accepted. While working in that position, the employee reported a fall that he claimed caused a left knee injury. Following a previous expedited hearing, the trial court ordered the employer to provide a panel of physicians for evaluation and treatment of the left knee. The panel-selected physician initially offered an opinion that the employee's left knee condition was primarily caused by the work-related fall the employee had described. He subsequently recommended left knee surgery. Later, in response to a questionnaire from the employer, the physician appeared to rescind his original causation opinion. During his subsequent deposition, the physician testified that the left knee condition could have been caused by the incident the employee described, but that causation was difficult to ascertain under the circumstances. Following receipt of all evidence, declarations, and briefs filed by the parties, the trial court issued a decision on the record in which it found the employee had not come forward with sufficient evidence indicating he was likely to prevail at trial in proving the cause of the need for additional left knee treatment, and the employee appealed. Upon careful consideration of the record, we affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

1

Carmen Y. Ware, Chattanooga, Tennessee, for the employee-appellant, Ronnie Slater

Charles E. Pierce, Knoxville, Tennessee, for the employer-appellee, ADECCO USA, Inc.

## Factual and Procedural Background

Ronnie Slater ("Employee"), a 58-year-old resident of Chattanooga, was employed by ADECCO USA, Inc. ("Employer"), a staffing agency, and was assigned to work at a company in Georgia. On January 20, 2020, Employee was helping maneuver large rolls of material at work when he felt a pop in his back and experienced pain radiating down his left leg. He reported the accident to Employer and eventually came under the care of Dr. Alex Sielatycki, who diagnosed an L5-S1 disc herniation with radiculopathy. Employee underwent surgical treatment of this condition in September 2020. At a follow-up visit in November 2020, Employee reported "significant improvement" in his low back pain but complained of persistent pain in his left leg. Nevertheless, Dr. Sielatycki concluded he was "fully recovered" from the lumbar surgery and should proceed with physical therapy. According to Dr. Sielatycki's report, Employee expressed interest in pain management treatment, and Dr. Sielatycki made a referral for that treatment. Employee was instructed to follow up with Dr. Sielatycki six weeks after starting physical therapy.

According to Dr. Sielatycki's February 12, 2021 report, Employee developed COVID-19 at some point after his previous appointment and was hospitalized for several weeks. Employee reported that he recovered from that illness and returned to work performing light duty at a local nonprofit company. He also told Dr. Sielatycki that, in late January 2021, an incident occurred at work when "he was reaching and lifting some empty boxes and tripped over a pallet and fell backwards landing on his back." Employee reported that he experienced "more soreness in his lower and upper back." He also reported "discomfort in his left leg," but there was no specific reference to the left knee. Under "Review of Symptoms," Dr. Sielatycki noted "no muscle pain, no muscle weakness, and no joint pain." He diagnosed "ongoing troubles with back pain" and concluded the recent fall had "merely exacerbated his underlying condition of lumbar spondylolisthesis," but he offered no diagnosis concerning the left knee. He recommended that Employee see a chiropractor, and he also commented that Employee "reported to me significant depression . . . and feeling out of control of his life and he is requesting a psychiatric evaluation." Dr. Sielatycki agreed and made a referral to a psychiatrist.

Over the course of the following six months, Employee continued to follow up with Dr. Sielatycki. In his May 2021 report, Dr. Sielatycki noted that "[t]he patient has requested a referral to psychiatry, but because this issue was not work related, workers' compensation was not able to provide this service." However, in that same report, Dr. Sielatycki commented that "I do believe his injury, with need for surgery . . . contributed

2

to his psychiatric distress and depression." There was no mention of left knee pain in that report.

In a September 2021 report, Employee complained of low back pain and reported he was taking hydrocodone as prescribed by a pain management specialist. Employee advised Dr. Sielatycki that his symptoms were "well managed" with the pain medication, but he also reported "residual numbness and weakness in his left foot." Dr. Sielatycki again diagnosed lumbar radiculopathy and stated that, "[f]rom a back standpoint, I believe he is at maximum medical improvement." Dr. Sielatycki ordered a functional capacity evaluation. He also stated, "[a]s far as the knee pain is concerned, I am going to refer him over to one of our knee specialists to evaluate that joint." He did not offer any opinion in that report regarding any left knee diagnosis or the cause of any left knee dysfunction.

On October 15, 2021, Employee filed a petition seeking a court order compelling Employer to provide treatment for both his psychiatric condition and his alleged left knee injury, as well as additional temporary disability benefits and attorneys' fees. Following a period of discovery, Employer filed notices in March 2022 indicating it had provided panels of physicians for both a psychiatric evaluation and a left knee evaluation. As a result, the court issued an expedited hearing order that addressed only Employee's claim for additional disability benefits, which the court granted in part.

With respect to the left knee claim, Employee eventually came under the care of Dr. Jason Rogers, an orthopedic specialist. Employee first saw Dr. Rogers in July 2022. Dr. Rogers's report from that date indicated Employee had experienced "left lower extremity instability at work which caused him to fall." Employee described "constant pain with an occasional popping." Dr. Rogers provided Employee with a cortisone injection and a knee brace, and he prescribed physical therapy.

In August 2022, Dr. Rogers noted that Employee did not get relief from the cortisone injection, and Employee rated his pain at 10 out of 10. He had not been approved for physical therapy, which Dr. Rogers again recommended. However, Dr. Rogers's report also indicated that Employee "has reached maximum medical improvement." Employee returned in October, and Dr. Rogers noted that his attorney "is requesting a permanent partial impairment rating." In response, Dr. Rogers stated, "this does not usually occur until after maximum medical improvement," apparently not recalling the statement in his August report addressing maximum medical improvement.

In December 2022, Employee filed another request for an expedited hearing to address Dr. Rogers's recommendation for physical therapy to treat the left knee condition and for additional temporary disability benefits. Employer filed a response arguing there was insufficient evidence to indicate the left knee condition arose primarily from a work-related accident. Employer further asserted that Employee had "made inconsistent

accounts of the origin of the left knee pain." In response, Employee asserted that Dr. Rogers had confirmed a causal relationship between the January 2021 work incident and the need for left knee treatment. In a March 14, 2023 expedited hearing order, the trial court ordered Employer to authorize the physical therapy as prescribed by Dr. Rogers. That order was not appealed.

Over the next several months, the court conducted periodic status conferences to address preparations for trial. Meanwhile, Employee returned to Dr. Rogers in June 2023, and the report of that visit reflected diagnoses of left knee pain and osteoarthritis. Dr. Rogers again indicated that "Patient is at MMI." In an August 2023 report, Dr. Rogers noted that Employee's condition had "worsened overall." He recommended additional physical therapy and "viscosupplementation." In November 2023, Dr. Rogers noted that the viscosupplementation "did not provide relief." He discussed the possibility of surgery with Employee and offered him an injection. In December 2023, Dr. Rogers ordered an MRI of the left knee due to increasing instability. The MRI confirmed "degeneration in the patellofemoral joint" and "a tear in the meniscus." In his March 2024 report, Dr. Rogers noted that Employee "has a history of arthritis in the kneecap and a meniscus tear, likely caused by one of his falls," as well as a history of "degeneration in his patellofemoral joint." Dr. Rogers also indicated that Employee had experienced "repeated falls." He recommended surgery to "clean out the meniscus" and the "patellofemoral area where the arthritis and cartilage damage are present." He also noted that knee replacement would likely be necessary in the future.

In response to Dr. Rogers's evaluation and recommendations, Employer declined to authorize the left knee surgery, citing a dispute regarding the primary cause of the need for that treatment. Following two more status conferences, Employee filed a third request for an expedited hearing in August 2024, asking the court to compel Employer to authorize the knee surgery. In support of his position, Employee provided Dr. Rogers's responses to a medical questionnaire prepared by his attorney in which Dr. Rogers agreed that the "need for treatment to the left knee [is] greater than 50% related to the work injury." Employer then sought to depose several physicians, including Dr. Rogers, Dr. Vaughn, and Dr. Musick.[1] In addition, Employer filed Dr. Rogers's responses to its own medical questionnaire, which it asserted contradicted his earlier causation opinions.

After several delays and requests for extensions of time, the court set filing deadlines in a February 2025 order. Thereafter, Employee filed the deposition transcripts of Dr. Rogers, whose deposition encompassed testimony on three separate occasions in November 2024, January 2025, and March 2025, as well as the deposition transcript of Dr.

_____

[1] Employee sought to quash the deposition notices for Dr. Vaughn and Dr. Musick, but the court allowed those depositions to proceed in a September 16, 2024 order.

Vaughn.  Each party then filed briefs, and the trial court considered all evidence and briefs submitted by the parties in making a decision on the record.[2]

In its May 28, 2025 expedited hearing order, the trial court concluded that Employee had not come forward with sufficient evidence indicating that the alleged January 2021 fall at work was the primary cause of the need for additional left knee treatment.  Specifically, after reviewing Dr. Rogers's deposition testimony, the Court determined that "Dr. Rogers does not have a definitive opinion about the causation of [Employee's] left knee injury."  As a result, the court concluded that Employee had not shown a likelihood of prevailing on that issue at trial, and it denied his request for an order compelling additional treatment for the left knee.  Employee has appealed.

**Standard of Review**

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024).  When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court.  *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009).  However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence."  *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at \*6 (Tenn. Workers' Comp. Panel Jan. 18, 2018).  Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed de novo with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013).  We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer.  Tenn. Code Ann. § 50-6-116 (2024).

**Analysis**

At an expedited hearing in which an employee seeks additional temporary disability and/or medical benefits, the employee has the burden of coming forward with sufficient evidence to convince the trial court he is likely to prevail at trial in proving entitlement to such benefits by a preponderance of the evidence.  *See, e.g.*, *Ridley v. Mature Care of Standifer Place, LLC*, No. 2022-01-0478, 2024 TN Wrk. Comp. App. Bd. LEXIS 24, at \*15 (Tenn. Workers' Comp. App. Bd. July 9, 2024).  A trial court is often tasked with

---

[2] In lieu of conducting an in-person evidentiary hearing, a trial court is authorized in certain circumstances to issue a decision following a review of the record.  *See* Tenn. Code Ann. § 50-6-239(d)(2); Tenn. Comp. R. & Regs. 0800-02-21-.15(1)(e).

reviewing expert medical testimony in assessing an employee's entitlement to additional benefits, and the court has discretion to accept the medical opinion that offers the more probable explanation. *Kelley v. Express Services, Inc.*, No. 2023-06-1638, 2024 TN Wrk. Comp. App. Bd. LEXIS 4, at *12-13 (Tenn. Workers' Comp. App. Bd. Feb. 26, 2024). However, when the expert medical proof is presented by deposition, an appellate court is in an equivalent position with the trial court to assess that evidence. *See, e.g., Lavender v. Saturn Corp.*, No. M2002-00759-WC-R3-CV, 2003 Tenn. LEXIS 348, at *3-4 (Tenn. Workers' Comp. Panel May 5, 2003) ("We may make an independent assessment of the medical proof which is submitted by deposition, reports or records."). Finally, on appeal, we are to apply a presumption that the findings and conclusions are of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-239(c)(7).

Here, the critical issue is whether Employee came forward with sufficient evidence to convince the court he is likely to prevail at trial in proving his left knee condition arose primarily from a work-related accident. To date, Employee has not clearly addressed whether he claims the left knee injury arose as a direct and natural consequence of the original January 2020 work accident, whether the left knee condition arose primarily from a new and distinct work accident in January 2021, or whether a work-related accident caused a compensable aggravation of a preexisting left knee condition. Regardless of which theory of recovery Employee ultimately pursues, however, we cannot conclude the trial court erred in determining the causation opinions offered by Dr. Rogers to date are insufficient to meet Employee's burden of proof.

As the trial court noted, Dr. Rogers's records contain various inconsistent statements regarding maximum medical improvement and causation. Dr. Rogers responded differently to medical questionnaires submitted by each party, but the trial court specifically discounted the questionnaire presented by Employer's counsel because, in the court's view, it included factual allegations not supported by the record. Nevertheless, the court determined that Dr. Rogers's deposition testimony was inadequate to meet Employee's burden of proof because it was equivocal as to the issue of medical causation. Specifically, the court noted Dr. Rogers's testimony that he could not determine when the cartilage damage occurred and his statement that "there is no way of knowing the timing or chronicity of the degeneration in the patellofemoral joint." He also expressed difficulty in assessing causation in circumstances where he did not have the opportunity to examine the patient close in time to the alleged accident and no diagnostic study was performed until several years after the alleged accident. Ultimately, in Dr. Rogers's view, a determination of causation is driven primarily by the timing of the patient's pain and other symptoms, which he could not determine based on the record.

Moreover, Dr. Sielatycki's February 2021 report, which is the only medical record close in time to the alleged January 2021 fall, does not indicate that Employee described a

knee injury, a twisting injury, or knee pain caused by that fall. Instead, according to Dr. Sielatycki's report, Employee complained of low back pain. Although Dr. Sielatycki noted a complaint of "discomfort in his left leg," he also noted "no joint pain." In addition, several of Dr. Sielatycki's reports from before the January 2021 fall documented Employee's complaints of pain and discomfort in the left leg, even after the September 2020 back surgery. Ultimately, Dr. Sielatycki concluded the January 2021 fall had "merely exacerbated his underlying condition of lumbar degenerative spondylolisthesis." In short, the February 2021 report contains no mention of a knee-twisting incident as later described by Employee, and there was no complaint regarding the left knee specifically. This report is consistent with and helps further explain Dr. Rogers's testimony describing the difficulty in assessing causation of the left knee condition. Thus, under the circumstances, we agree with the trial court that Employee has not come forward with sufficient evidence to indicate a likelihood of prevailing at trial in proving the left knee condition arose primarily from a work-related accident.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employee.

7



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Ronnie Slater | ) | Docket No. 2020-01-0512 |
| | ) | |
| v. | ) | State File No. 49580-2020 |
| | ) | |
| ADECCO USA, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Thomas L. Wyatt, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 20th day of August, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Carmen Y. Ware | | | | X | cyware@thewarelawfirm.com |
| Charles E. Pierce | | | | X | cepierce@mijs.com jdhaynes@mijs.com |
| Thomas L. Wyatt, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov